UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RANDAL SWAFFORD,         )<br>    Plaintiff,             )<br>                         )<br>    v.                   )<br>                         )<br>MICHAEL J. ASTRUE, Commissioner of  )<br>the Social Security Administration,  )<br>    Defendant.           ) | CAUSE NO.:  2:05-CV-376-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Plaintiff's Motion for an Award of Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act [DE 23], filed by Plaintiff Randal Swafford on August 20, 2007. On September 6, 2007, the Defendant, the Commissioner of the Social Security Administration, filed a response. On September 27, 2007, the Plaintiff filed a reply. For the following reasons, the Court grants the Motion but awards a reduced amount of attorney's fees.

**PROCEDURAL BACKGROUND**

On November 19, 2002, the Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging disability since July 26, 2001. The Plaintiff's claim for benefits was denied initially on February 13, 2003, and again upon reconsideration on June 11, 2003. Upon the Plaintiff's request, Administrative Law Judge ("ALJ") John Pope held a hearing on August 16, 2004, in Merrillville, Indiana. The Plaintiff appeared in person and by counsel, and testified at the hearing. Vocational Expert ("VE") Leonard Fisher also testified at the hearing. On May 2, 2005, the ALJ issued a decision finding that the Plaintiff was not disabled as defined by the Social Security Act.

On June 28, 2005, the Plaintiff submitted a request for review of the hearing decision to the Social Security Administration Appeals Council. On August 18, 2005, the Appeals Council denied

the Plaintiff's request. As a result, the ALJ's May 2, 2005 decision became the final decision of the Commissioner.

On October 11, 2005, the Plaintiff filed a Complaint in this Court, seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and alleging that the ALJ's decision was not supported by substantial evidence and was premised on errors of law. On June 22, 2007, the Court issued an order remanding the case for further administrative proceedings and the Court Clerk entered final judgment in this matter.

On August 20, 2007, the Plaintiff filed his Motion for Attorney's Fees Under the Equal Access to Justice Act ("EAJA") and a memorandum in support thereof. The Motion is fully briefed and before the Court.

## ANALYSIS

In his Motion for Attorney's Fees, the Plaintiff requests an award of fees at an hourly rate of $161.77 for attorney work, under the EAJA, representing the cost of living adjustments allowed by 28 U.S.C. § 2412(d)(2)(A)(ii) when employing the "All items" figure provided by the Consumer Price Index. The Plaintiff also requests an hourly rate of $85.00 for the work performed by a legal assistant. Finally, the Plaintiff requests compensation for the time spent preparing the instant Motion for Attorney's Fees and a reply brief in support of the Motion.

In his opening Motion, the Plaintiff requests attorneys' fees in the amount of $9,865.78, which represents 59.2 attorney hours at the rate of $161.77 per hour (totaling $9,576.78); and 3.4 legal assistant hours at the rate of $85.00 per hour (totaling $289.00). In his reply brief, the plaintiff

requests an adjusted total amount of attorneys' fees of $11,030.52, to include 7.2 attorney hours at the rate of $161.77 per hour (totaling $1,164.74) spent preparing the reply brief.[1]

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the [Commissioner] was substantially justified, or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 154 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Pursuant to 42 U.S.C. § 2412(d)(1)(B), a fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the applicant is "eligible to receive an award;" (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed;" and (4) an "alleg[ation] that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this case, it is uncontested that the Plaintiff was the prevailing party and that he filed the Motion in a timely manner. There are now two issues before this Court: (A) whether the position of the Commissioner was "substantially justified;" and (B) whether the fees requested by the Plaintiff are reasonable. The Court will address the issues separately.

---

[1] The total attorneys' fees listed in this Order are slightly different from the figures contained in the Plaintiff's briefs as a result of the Court's correction of mathematical errors.

**A.  Substantially justified**

Considering whether the Commissioner was substantially justified, the court is to analyze the "position of the [Commissioner]", which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct. *See* 28 U.S.C. § 2412(d)(2)(D); *Golembiewski*, 382 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994).  The trial court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Golembiewski*, 382 F.3d at 724 (citing *Hallmark Constr.*, 200 F.3d at 1080).  A court need only make one determination regarding the Commissioner's conduct during the entire civil action. *Jean*, 496 U.S. at 159; *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996).  The court should evaluate the factual and legal support for the government's position throughout the entire proceeding. *See Hallmark Constr.*, 200 F.3d at 1080.  "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus*, 17 F.3d at 1036.  The court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue. *See Hallmark Constr.*, 200 F.3d at 1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Golembiewski*, 382 F.3d at 724.  Expanding on this definition, the United States Court of Appeals for the Seventh Circuit stated, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there

4

is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565).  The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand.  *See Pierce*, 487 U.S. at 568-69.  The Commissioner carries the burden of proof to show that its litigation position was substantially justified.  *Pierce*, 487 U.S. at 565; *Golembiewski*, 382 F.3d at 724.

For explanatory purposes, the Court summarizes its June 22, 2007, order that remanded this case for further proceedings.  The case presented four issues on review: (1) whether the ALJ properly analyzed the reports of the Plaintiff's treating and consulting physicians; (2) whether the ALJ properly analyzed the Plaintiff's credibility; (3) whether the ALJ posed a proper hypothetical to the VE; and (4) whether the ALJ properly found that the Plaintiff was able to perform his past work as a machinist.  Analyzing the first issue, the Court found that while the ALJ gave a detailed account of the Plaintiff's medical history, he failed to explain why he adopted the opinions of the Plaintiff's consulting physicians over the opinions of treating physicians and omitted certain physical limitations identified by the consulting physicians in his hypothetical to the VE.  The Court explained that it was "left to speculate as to why the ALJ adopted the consulting physician's opinion" and that the "ALJ's decision is devoid of any explanation." *Swafford v. Astrue*, 1:05-CV-376-PRC, at 19 (N.D. Ind. June 22, 2007) (opinion and order remanding case) (hereinafter, "June 22, 2007 Opinion and Order").

Discussing the second issue, the Court found the ALJ's credibility assessment to be supported by the medical evidence of record and concluded that the Plaintiff did not satisfy his burden of showing that the ALJ's determination was "patently wrong." *Id*. at 27.  With regard to

5

the third issue, the Court held that the ALJ's hypothetical question to the VE was deficient because it failed to include the Plaintiff's difficulties in overhead activities, which were included in the ALJ's RFC analysis. However, the Court found that the ALJ did not err by failing to include a limitation in concentration, persistence, and pace in his hypothetical to the VE because it was not a "relevant limitation." *Id*. at 29.

Examining the fourth issue, the Court found that according to the record, the Plaintiff was capable of performing work in a number of machinist positions, and therefore, the ALJ did not err by concluding that the Plaintiff could perform his past work as a machinist. Yet, because the ALJ posed an improper hypothetical to the VE, a reevaluation of the number of available relevant machinist jobs was required nonetheless. The Court ultimately remanded the matter for further proceedings consistent with the June 22, 2007 order.

The Plaintiff argues that the errors found by the Court in its order remanding this matter for further consideration establish that the Commissioner's position lacked substantial justification. The Commissioner contends that despite the fact that the Court remanded this matter due to several errors committed by the ALJ, the Commissioner had a reasonable basis for concluding that the ALJ's analysis was adequate and reasonable. The Court will examine each issue remanded to the Social Security Administration individually.

*1. The ALJ's rejection of treating physicians' opinions*

With regard to the ALJ's failure to explain why he rejected the opinions of treating physicians Drs. Fakhouri and Snead, the Commissioner argues that although the ALJ disregarded their opinions, he incorporated the impairments found by Drs. Fakhouri and Snead into his RFC finding, which cures any failure. In support of his position that incorporation into the RFC finding

6

is the controlling issue, the Commissioner cites *Collins ex rel. Williams v. Barnhart*, a decision of the United States Court of Appeals for the Eighth Circuit.  *See* 335 F.3d 726 (8th Cir. 2003).  In *Collins*, the plaintiff argued that the ALJ should have rejected the testimony of a treating physician because the physician diagnosed a type of Attention Deficit Hyperactivity Disorder that is not recognized by the DSM-IV diagnostic manual.  The plaintiff argued that because the physician made an unrecognized diagnosis, his opinion was inherently unreliable and inadequate.  The court disagreed and reasoned, "the diagnosis has minor significance one way or the other . . . the dispositive question remains whether [the claimant's] functioning in various areas is markedly impaired, not what one doctor or another labels his disorder."  *Id.* at 730-31.

Here, the Court finds that the Commissioner misinterpreted the Court's order remanding this matter.  The Court did not find fault in the ALJ's analysis of limitations found by treating doctors in considering the Plaintiff's RFC, which was the issue upon which the *Collins* court based its decision.  Rather, and more simply, the Court found that the ALJ failed to engage in the analysis required to reject a treating physician's findings.  In terms of analyzing a treating physician's opinion, the regulations require that "[w]hen we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R.§ 404.1527(d)(2).  Similarly, the common law dictates that an ALJ is allowed to discount the opinion of a treating doctor only if the opinion is inconsistent with the opinion of a consulting physician or when the opinion is internally inconsistent, and if the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability."

7

*Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (quoting *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

The Commissioner argues that despite the ALJ's failure to explain his rejection of the treating physicians' opinions, he reached the proper result because he integrated all of the findings that the treating physicians made into his RFC analysis, and thus his error was harmless in the end. The Court rejects this argument. The regulations are not concerned only with arriving at the correct result. The regulations are also concerned with the ALJ providing a trail of analysis that can be traced to explain the ALJ's decision, be it right or wrong. Eliminating any speculation on this point, the first sentence of 20 C.F.R. § 404.1527(d) provides, "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). The regulation goes on to emphasize that treating physician opinions, likely based on personal observations, will be given consideration above and beyond other opinions, which have less of a clear indication of reliability. *See id.* Here, the ALJ failed to analyze the opinions of two treating physicians, thus disregarding the mandate of 20 C.F.R. § 404.1527(d). The ALJ's failure was not merely an articulation failure, as the Commissioner contends, but it was an analysis failure, which did not allow the Court to follow the ALJ's reasoning and thus prevented the Court from understanding how the ALJ arrived at his conclusions.

The Court agrees with the Plaintiff that the ALJ failed to follow 20 C.F.R. § 404.1527(d)'s requirements to analyze treating physician opinions. In its order remanding this case, the Court found that "the ALJ's decision is devoid of any explanation" for disregarding the opinions of Drs. Fakhouri and Snead. The ALJ's decision is part of the Commissioner's pre-litigation position. *See Golembiewski*, 382 F.3d at 724 (citing *Sutton v. Chater*, 944, F. Supp. 638, 639 (N.D. Ill. 1996)).

8

Thus, the Court finds that the Commissioner's support of the ALJ's failure is not substantially justified.

*2. The ALJ's recognition of only some of the limitations identified by the consulting physicians*

The Commissioner next argues that he was substantially justified in defending the ALJ's failure to address all of the limitations suggested by state agency reviewing physicians Drs. Crawford and Dobson. The ALJ found that the Plaintiff had limitations in the areas of climbing, lifting, pushing and pulling, and overhead reaching. The ALJ did not address the Plaintiff's limitations in the areas of balancing, stooping, kneeling, crouching, or crawling, which Drs. Crawford and Dobson opined were present. The Commissioner contends that a lack of support elsewhere in the medical record for these specific findings of Drs. Crawford and Dobson provides a reasonable basis for concluding that the ALJ was not required to discuss the limitations. In addition, the Commissioner points to the Plaintiff's testimony at the hearing before the ALJ for support. The Plaintiff testified that he could not climb, lift, reach, push, or pull with his right arm. He did not testify to the other limitations.

The Commissioner did not cite any law in support of his argument that the ALJ's ignorance of limitations found by two physicians was reasonable. The regulations provide that "administrative law judges must consider findings of State agency medical . . . consultants . . . as opinion evidence." 20 C.F.R. § 404.1527(f)(2)(i). The regulations also state, "the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii). Here, the ALJ did not merely fail to properly

9

analyze limitations found by the State agency physicians, he failed to consider several of the doctors' findings altogether. The Court finds that this failure to analyze is contrary to the law, and as a result, the Commissioner's support of the ALJ's decision is not substantially justified.

As a practical matter, the Court's opinion remanding this case demonstrates the serious implications of the ALJ's omission. The ALJ concluded that the Plaintiff was able to perform his past work as a machinist. However, the Court pointed out that the Dictionary of Occupational Titles (4th rev. ed. 1991) ("DOT"), states that "a machinist (DOT § 600.280-026) job requires occasional stooping (exists up to one-third of the time), occasional kneeling (exists up to one-third of the time), and occasional crouching (exists up to one-third of the time)." June 22, 2007 Opinion and Order at 22. "Because the ALJ did not include these limitations in the hypothetical posed to the VE, this Court cannot be sure that machinist jobs, which accommodate all the limitations enumerated in the consulting physicians' opinion, exist in the national economy." *Id*. Thus, the ALJ's lack of analysis may have had a serious impact on the final outcome of this case. This example makes clear why a certain level of analysis is legally required of the ALJ with regard to all medical evidence.

*3. The ALJ's failure to include all RFC limitations in the hypothetical posed to the VE*

The Commissioner next argues that the ALJ's failure to include the Plaintiff's limitation in overhead reaching in his hypothetical to the VE was justified even though the ALJ included the limitation in his RFC finding. In support of his argument, the Commissioner points to the VE's testimony, which includes a statement by the VE that the jobs suggested by the ALJ require bimanual dexterity but require use of the right hand only on occasion, not on a constant or repeated basis. *See* R. at 293. The Commissioner argues that this testimony provides a reasonable basis for arguing that the Plaintiff's overhead reach limitation was adequately considered. In response, the

10

Plaintiff points to the same testimony of the VE and argues that the testimony discussed use of the right hand but it should have properly discussed the right arm. The Plaintiff also argues that the testimony discussed lifting the right hand, but did not discuss lifting it overhead, and thus was not adequately specific to the Plaintiff's limitation.

Here, the Court finds the Commissioner's argument prevailing. The VE testified that the proposed job required only occasional use of the right hand. Occasional use of the right hand has a direct implication on a limitation of lifting the right arm overhead and is consistent with being able to accommodate such a limitation. Despite the possible inaccuracy in the VE's testimony, be it a misnomer or lack of technical specificity, referring to use of a dominant hand rather than an arm does not affect the VE's testimony to such a degree that it would render the testimony unsupportive of the ALJ's finding. Thus, the Court finds that the VE's testimony sufficiently provided substantial justification for the ALJ's decision and the Commissioner's defense of that decision.

*4. Conclusion*

The Court finds that the Commissioner was not substantially justified in his pre-litigation or litigation positions on the following issues: (1) disregarding the treating physicians' opinions, and (2) disregarding specific limitations found by consulting physicians (although the Court only needs to make one finding as to the justification of the Commissioner's position). The Court concludes that the Commissioner's position was not substantially justified.

### B.  Fees

The Plaintiff is a prevailing party for purposes of EAJA fees as a result of the Court's order dated June 22, 2007, which reversed and remanded the Commissioner's decision. *See Shalala v.*

11

*Schaefer*, 509 U.S. 292, 300-02 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir. 1995). The Plaintiff therefore has the burden of proving that the EAJA fees he seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); 28 U.S.C. § 2412(d)(1)(B). In *Hensley*, the Supreme Court explained that "[h]ours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." *Id*. at 434. As a result, the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Id*. The amount of a fee award is left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id*. at 437.

Here, the Plaintiff applies for $11,030.52 in fees resulting from 66.4 hours of attorney work and 3.4 hours of legal assistant work, which he argues was a reasonable amount of time spent working on this case. The Commissioner disagrees, and argues that the fees are excessive and redundant. The Commissioner does not challenge the Plaintiff's requested hourly rate of $161.77 for attorney work but does challenge the overall number of work hours submitted in the Plaintiff's time sheet.[2] The Plaintiff's time sheet requests attorney's fees for a total of 69.8 hours of work, including time spent drafting the instant Motion and a reply in support of the Motion.

The Commissioner argues that the Plaintiff and his attorneys, Kristin A. Kobayashi and Barry A. Schultz, failed to explain why 69.8 hours of work were necessary in this case, which the Commissioner contends had a relatively short administrative record of 295 pages. In support of his argument, the Commissioner states that many courts have found that Social Security disability cases

---

[2]The Commissioner states that he is not aware of legal support for the Plaintiff's position that $161.77 is the appropriate rate for all of the attorney hours spent on this case. Nevertheless, the Commissioner does not challenge this position because based on the Commissioner's calculations, if the proper cost of living increase was used for each year in which work was performed, the Plaintiff would actually be able to request a slightly higher overall fee.

12

litigated in district courts typically require approximately twenty to forty hours of work. The Commissioner cites five federal court cases for this proposition, all of which were decided by courts outside the Seventh Circuit. For example, the Commissioner relies on the United States District Court for the Central District of California's decision in *Patterson v. Apfel*, in which the court surveyed over a dozen social security EAJA fees cases from district and circuit courts across the country (but none from the Seventh Circuit) to conclude that the 33.75 hours in fees requested by the plaintiff fell within an approved range. *See* 99 F. Supp. 2d 1212, 1214-15 n.2 (C.D. Cal. 2000).

Arguing that attorney's fees are frequently awarded to plaintiffs who request compensation for numbers of hours worked that are consistent with those submitted in this case, the Plaintiff cites several district court cases decided by courts within this circuit. In *Bailey v. Barnhart*, the court found 67.7 hours of attorney and legal assistant work time was reasonable, and awarded attorney's fees to the prevailing plaintiff for that time. *See* 473 F. Supp. 2d 842, 853 (N.D. Ill. 2006). Similarly, in *Wirth v. Barnhart*, the court awarded 61.1 hours in attorney's fees to the prevailing plaintiff. *See* 325 F. Supp. 2d 911, 915-19 (E.D. Wis. 2004). Finally, in *Cuevas v. Barnhart*, the court awarded 59.5 hours in fees comprised of attorney and legal assistant work time to the prevailing plaintiff. *See* No. 02 C 4336, 2004 WL 3037939, at *2 (N.D. Ill. Dec. 30, 2004).

Here, the Plaintiff's attorneys submitted an itemized time sheet, as they are required to do, with the instant Motion. The time sheet reveals a detailed breakdown of the attorneys' work in this case. Generally, the time sheet shows that the Plaintiff's attorneys worked efficiently. However, the Court finds three exceptions to this generally efficient attorney work.

The first exception is contained in four time entries. The entries correspond with two meetings, attended by both of the Plaintiff's attorneys, for which both attorneys billed their time.

13

The Commissioner argues that such double billing is unreasonable. In support of this argument, the Commissioner cites *Lopez v. Shalala*, Nos. 89 C 6482, 90 C 392, 1994 WL 478547, at *10 (N.D. Ill. Aug. 31, 1994). In *Lopez*, the court scrutinized the plaintiff's fee application for duplicative time. The application contained billing for numerous meetings between a senior partner at the law firm representing the plaintiff and two junior associates. The senior partner billed for his time spent at each of these meetings but the junior associates did not. The court found this practice quite reasonable. *See id.* In addition, the junior associates met with a paralegal twenty-four times to discuss the case. On twenty occasions, only one of the individuals billed their time. The court concluded that the four instances in which multiple persons billed their time did not constitute over billing in light of the twenty other occasions of single billing. *See id.*

Here, the attorneys representing the Plaintiff met on two occasions to discuss the Plaintiff's case. The meetings totaled 2.2 hours combined for both attorneys. The Court finds both of the meetings to be analogous to the meetings in *Lopez*, in that a senior attorney met with a junior associate(s). However, here unlike *Lopez*, on both occasions, both attorneys billed for the meetings. The description of Attorney Schultz's time in the meetings is as follows: "meet with KAK to discuss proposed modifications and reorganization" and "conference with KAK to discuss revisions." Pl.'s Br. Ex. 1 at 2. Based on these limited descriptions of the work done in the two meetings, it appears that Attorney Schultz used the meetings to give guidance to the less experienced Attorney Kobayashi. The Court finds that awarding fees to both attorneys for time spent by one attorney instructing the other is excessive. As a result, the Court finds that only Attorney Schultz should be awarded fees for the time spent in the two meetings and the Court reduces the Plaintiff's billing

14

statement by 1.1 hours of attorney work, which was the time billed by Attorney Kobayashi for the two meetings.

The second exception to the Plaintiff's attorneys' generally efficient work is a December 20, 2006, time entry for 3.2 hours of work by Attorney Kobayashi. The time entry states that Attorney Kobayashi worked on three different activities in those 3.2 hours, including reviewing the "Administrative Law Judge decision." *Id*. In a separate, prior time entry, dated November 2, 2006, Attorney Kobayashi also "reviewed Administrative Law Judge decision." *Id*. The Court finds that the second time entry dedicated to reviewing the ALJ's decision constitutes unnecessary, repetitive work. As a result, the Court finds that the December 20, 2006, time entry should be reduced by the amount of time that Attorney Kobayashi spent reviewing the ALJ's decision. Unfortunately, the time entry does not apportion the time spent on each of the three activities worked on during the 3.2 hours. Therefore, to fairly reduce the time spent reviewing the ALJ's decision, the Court will subtract approximately one-third, or one hour, from the time entry for the one activity that was repetitive work.

The third exception is a December 21, 2006, time entry for 4.0 hours of work by Attorney Kobayashi. The description of the time entry states, "[Attorney Kobayashi] research[ed] cases on Commissioner['s] failure to address plaintiff['s] argument, draft section on [C]ommissioner['s] fail[ure] to address 4 of plaintiff's arguments." *Id*. The time entry is attributed to Attorney Kobayashi's work on one section of the Plaintiff's reply brief seeking remand. Examining the reply brief, the section devoted to the Commissioner's failure to respond to several of the arguments submitted in the Plaintiff's Opening Brief is three pages long. Much of the section is devoted to a summary of the arguments submitted in the Opening Brief, to which the Commissioner failed to

15

respond. The 4.0 hours of work submitted in the Plaintiff's time sheet appears to the Court to be an unreasonably long amount of time for Attorney Kobayashi to work on a three-page section of the Plaintiff's reply brief. The Court finds one hour to be a reasonable amount of time to bill the Commissioner for the Plaintiff's attorney's work on this section of the brief and accordingly reduces the Plaintiff's billing statement by 3.0 hours of attorney work time. Considering the three reductions in time, the Court subtracts a total of 5.1 hours from the Plaintiff's attorneys' billing statement, which at the Plaintiff's attorneys' hourly rate of $161.77, totals an $825.03 subtraction from the Plaintiff's total fees and reduces the fee amount to $10,205.49.

The Commissioner submits one additional general argument to reduce the fees sought by the Plaintiff. The Commissioner argues that the 26.7 hours spent by Attorney Kobayashi drafting the initial district court brief, and the 14.9 hours spent by Attorney Kobayashi drafting the reply brief, are excessive and redundant. The Commissioner argues that Attorney Kobayashi is relatively inexperienced, having been licensed in Illinois in 2004. The Commissioner contends that due to Attorney Kobayashi's inexperience, more senior counsel, Attorney Schultz, had to spend five hours reviewing and revising her briefs and drafting a memo that detailed which issues should be addressed in the reply brief. The Commissioner argues that the EAJA is not intended to subsidize the training and development of new attorneys, but rather is designed to provide reasonable compensation to a prevailing party's attorneys.

In response, the Plaintiff states that it is Attorney Schultz's practice to review all briefs written by the associates who work for him. The Plaintiff asserts that clients hire the senior attorney, but due to the demands of the position, the senior attorney is not able to spend time performing all the work in each office file. Of the 66.4 hours of attorney work in this case, 12.7 of those hours

16

were Attorney Schultz's work hours and the remaining 53.7 were Attorney Kobayashi's work hours. Aside from the three exceptions explained *supra*, the Court cannot find any other incidents of excessive or redundant work. Rather, the entries indicate that Attorney Kobayashi's work steadily moved this matter toward a resolution. As a result, the Court finds that with regard to the remaining hours, the Plaintiff's attorneys worked on this case in a reasonable manner, distributing work between an associate and senior attorney in a way that is consistently seen through out social security litigation, and in other areas of the law.

Considering the time sheet submitted by the Plaintiff and comparing it to the recent decisions of the courts in this circuit, the Court finds that the 69.8 hours billed in this case, subtracting the 5.1 hours of unnecessary work described above, while on the high edge of hourly billing in social security cases, is not patently unreasonable. The Plaintiff's attorneys and legal assistant competently represented the Plaintiff throughout this matter to a positive result. The time records of the Plaintiff's legal representatives reflect for the most part a reasonable total number of hours worked on this case. As a result, the Court finds that a total of 64.7 work hours is a reasonable figure for the work done in this case on the Plaintiff's behalf.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Plaintiff's Motion for an Award of Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act [DE 23] **but with relief different than that requested**. The Court awards the Plaintiff a total of $10,205.49 in attorneys' fees. The Court further **ORDERS** that the payment in the amount of $10,205.49 be made directly to the Law Offices of Barry A. Schultz, P.C. in accordance with the Retainer and Fee Agreement for Federal Court Representation signed by the Plaintiff.

SO ORDERED this 25th day of October, 2007.

                                          s/ Paul R. Cherry
                                          MAGISTRATE JUDGE PAUL R. CHERRY
                                          UNITED STATES DISTRICT COURT

cc:    All counsel of record